Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| WENDIRENNE MARIE ANTONIA LOZADA PARÍS<br><br>RECURRIDA<br><br>v.<br><br>JOSHUA JERRYEL RIVERA AGOSTO<br><br>PETICIONARIO | KLCE202400332 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. LO2023RF00061<br><br>Sobre: Relaciones Paterno/Materno Filiales |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero, y la Jueza Boria Vizcarrondo.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de abril de 2024.

## I.

El 19 de marzo de 2024, el señor Joshua Jerryel Rivera Agosto (señor Rivera Agosto o peticionario) presentó una petición de *Certiorari* en la que solicitó que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, (TPI o foro primario) el 24 de enero de 2024, notificada y archivada electrónicamente en autos el 26 de enero de 2024.[1] En el dictamen, el TPI denegó una solicitud de desestimación radicada por el señor Rivera Agosto relacionada con la *Demanda solicitando relacione[s] materno filiales* que promueve la señora Wendirenne Marie Antonia Lozada París (señora Lozada París o parte recurrida) para reestablecer su relación maternofilial con una menor, hija de las partes (la menor).

---

[1] Apéndice de la petición de *Certiorari*, Anejo XXI, págs. 44-45.

El 21 de marzo de 2024, emitimos una *Resolución* en la que le concedimos a la señora Lozada París un término de diez (10) días para exponer su posición sobre los méritos del recurso.

El 1 de abril de 2024, la señora Lozada París radicó un *Escrito en oposición a Certiorari* en el que solicitó que confirmemos la *Orden* recurrida.

Contando con la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales relevantes a la atención de la petición de *Certiorari* de epígrafe.

**II.**

El caso de epígrafe tiene su génesis el 14 de diciembre de 2023 cuando la señora Lozada París presentó ante el TPI una *Demanda solicitando relacione[s] materno filiales* en la que solicitó que se permitiera restablecer las relaciones maternofiliales entre ella y la menor, especialmente de forma supervisada mientras se preparaba el Informe Social Forense necesario.[2] Este pleito recibió el alfanumérico LO2023RF00061.

Según expuso la reclamación, el 28 de mayo de 2021, el TPI dictó una *Sentencia* en el caso LO2021RF00005 en la que privó a la parte recurrida de la patria potestad sobre la menor, concedió la custodia monoparental al señor Rivera Agosto y estableció una pensión alimentaria a favor de la menor.[3] Para ese momento, según esbozó, la señora Lozada París estaba sometiéndose a terapias, las cuales cumplió, y, hasta el momento, no ha visto a su hija desde hace tres (3) años. Por esas razones, solicitó al foro primario que permitiera las relaciones maternofiliales de forma supervisada y que ordenara la preparación de un informe social forense únicamente con miras a establecer este tipo de relación.

---

[2] Íd., Anejo I, págs. 1-2.
[3] Íd., Anejo II, págs. 3-7.

En el caso LO2021RF00005, el señor Rivera Agosto radicó una acción para que el TPI le concediera la custodia de la menor y privara a la señora Lozada París de la patria potestad. Producto de ese pleito, el foro primario emitió la referida *Sentencia* en la que realizó las siguientes determinaciones de hechos:

1. Las partes mantuvieron una relación sentimental de 6 años. Como producto de esa relación nació la menor JRL.
2. En el 2019, la menor tenía 7 años y con la madre [sic]. Estando bajo su techo y cuido, la menor le indicó que su medio hermano abusaba sexualmente de ella. Ello ocurrió en más de una ocasión. De inició la madre no fue protectora.
3. Posteriormente, la madre le notificó al padre, quien se encargó de llevar a JRL al Hospital.
4. El 12 de agosto de 2019, se le otorgó custodia de la menor al padre en el caso SJL2462019-028 sobre Orden de Protección 246.
5. El Tribunal Municipal ordenó estudio social del Departamento de la Familia, quien determinó que se daban los elementos de riesgo de maltrato físico, emocional y negligencia para otorgar la orden en contra de su madre.
6. El Departamento de la Familia realizó prueba de dopaje a los padres. La madre fue positivo a cocaína y marihuana.
7. La menor recibe servicios en CIMVAS y no se han radicado cargos criminales.[4]

Al disponer del caso, resolvió lo siguiente:

En el caso de autos, es el Demandante quien se ha encargado de velar por la salud, educación y bienestar de su hija desde el 12 de agosto de 2019. Los actos de agresión sexual ocurridos entre hermanos ocurrieron a distintas horas y momentos distintos bajo el cuidado exclusivo de la madre. Ella reconoce que existió negligencia en el cuido de la menor y tiene la esperanza de que se le puedan dar servicios. En la actualidad la familia recibe servicios en CIMVAS. Reconoce que no puede escoger entre sus hijos y entiende la seriedad de lo ocurrido.

El Tribunal no tiene duda de que el padre es quien debe ostentar la custodia exclusiva de la menor y que procede la privación de la patria potestad.

En vista de lo anterior, el Tribunal declara **HA LUGAR** la demanda y priva a la Sra. Wendirenne Marie Antonia Lozada Paris de la patria potestad ostentada sobre su hija y concede la custodia monoparental y la patria potestad exclusiva al padre Joshua Jerryel Rivera Agosto de la menor JRL. **Se refiere a EPA para que establezca una pensión en beneficio de la menor.**[5]

Ahora bien, la presentación de la *Demanda solicitando relacione[s] materno filiales* que desembocó en la petición de epígrafe

---

[4] Íd., págs. 3-4.
[5] Íd., pág. 7 (Énfasis y subrayado en el original).

fue el resultado de varios trámites motivados por solicitudes de la señora Lozada París en el caso LO2021RF00005 para reestablecer las relaciones maternofiliales. Resulta innecesario repasar dichas incidencias para la resolución de este caso.

El 12 de enero de 2024, el señor Rivera Agosto presentó una moción titulada *Asumiendo representación legal y solicitud de desestimación* en contestación a la *Demanda solicitando relacione[s] materno filiales* en la que solicitó que se desestimara dicha reclamación.[6] En ella, adujo que la *Sentencia* dictada en el LO2021RF00005 era final y firme y, en virtud de ella, la parte recurrida perdió el derecho a relacionarse con su hija, según dispone el Artículo 617 del Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 2020, según enmendada, 31 LPRA sec. 7331, (Código Civil).

El 16 de enero de 2024, el TPI emitió una *Orden* en la que le concedió a la parte recurrida hasta el 22 de enero de 2024 para mostrar causa por la que no debía desestimarse la acción.[7]

El 22 de enero de 2024, la señora Lozada París radicó una *Moción en cumplimiento de orden* en la que solicitó que se declarara No Ha Lugar la solicitud de desestimación.[8]

El 24 de enero de 2024, el TPI emitió la *Orden* recurrida en la que denegó la desestimación que solicitó el señor Rivera Agosto por no proceder en derecho.[9] Además, consignó lo siguiente:

> INCLUSO, SURGE DEL EXPEDIENTE ORIGINAL L02021RF00005, DE LA SALA 405, DONDE SE DICTO LA SENTENCIA SOBRE PRIVACION DE PATRIA POTESTAD, Y DONDE SE FIJO LA PENSION A LA SRA. LOZADA PARIS, QUE LA DEMANDANTE HIZO UNA SOLICITUD DE RELACIONES MATERNOFILILAES LUEGO DE DICTADA LA SENTENCIA Y LA SOLICITUD **NO FUE DESESTIMADA DE PLANO**, SINO QUE LA SALA 405 REQUIRIO QUE SE EMPLAZARA AL SR. RIVERA AGOSTO POR ENTENDER QUE SE TRATABA DE UNA CAUSA DE ACCION NUEVA.
>
> ULTERIORMENTE SE RADICO EL CASO DE AUTOS DE MANERA SEPARADA AL CASO ORIGINAL L02021RF00005.

---

[6] Íd., Anejo XVIII, págs. 34-35.
[7] Íd., Anejo XIX, pág. 36.
[8] Íd., Anejo XX, págs. 37-43.
[9] Notificada y archivada en autos el 26 de enero de 2024. Íd., Anejo XXI, págs. 44-45.

POR TANTO, LAS PARTES TIENEN 10 DIAS PARA PRESENTAR UNA MOCION CONJUNTA SOBRE RELACIONES MATERNOFILIALES. DE NO LLEGARSE A UN ACUERDO EL CASO SERA REFERIDO A LA UNIDAD SOCIAL PARA INVESTIGACION. (Énfasis en el original).

El 9 de febrero de 2024, el señor Rivera Agosto presentó una *Solicitud de reconsideración* en la que solicitó al foro primario que revirtiera su determinación y, en consecuencia, desestimara la acción promovida por la parte recurrida.[10]

El 15 de febrero de 2024, la señora Lozada París radicó una *Moción en cumplimiento de orden y oposición a moción de reconsideración* en la que argumentó que procedía rechazar la solicitud de reconsideración.[11]

El 19 de febrero de 2024, el TPI emitió una *Orden* en la que denegó la reconsideración solicitada por el peticionario.[12]

Inconforme, el 19 de marzo de 2024, el señor Rivera Agosto presentó la petición de *Certiorari Civil* de epígrafe y le imputó al foro primario la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al denegar la solicitud de desestimación de la demanda toda vez que las relaciones maternofiliales no proceden al haber una sentencia de privación de patria potestad permanente o irreversibles.

Es su posición que la *Sentencia* dictada por el TPI en el caso LO2021RF00005 privó a la señora Lozada París de la patria potestad sobre la menor de forma permanente e irreversible, impidiendo así el restablecimiento de las relaciones maternofiliales con la menor. A su entender, aunque la *Sentencia* no se expresó sobre el carácter ni la temporalidad de la privación de la patria potestad de la parte recurrida, se debe concluir que fue de forma permanente e irreversible. Por esa razón, argumentó que se debe revocar la determinación del foro primario y desestimar la acción.

---

[10] Íd., Anejo XXII, págs. 46-88.
[11] Íd., Anejo XXIV, págs. 90-95.
[12] Notificada, registrada y archivada digitalmente en autos el 20 de febrero de 2024. Íd., Anejo XXV, pág. 96.

El 1 de abril de 2024, la señora Lozada París radicó un *Escrito en oposición* en el que solicitó que confirmemos la *Orden* recurrida, puesto que, según argumenta, la *Sentencia* dictada en el caso LO2021RF00005 no le privó de la patria potestad de manera permanente e irreversible y no impedía el recurso que promueve ante el TPI. Por ello, planteó que no se puede interpretar el silencio del TPI sobre la privación de la patria potestad y el carácter irreversible que pretende darle el peticionario. Además, sostuvo que la desestimación no procedía procesalmente en la etapa en que se encuentra el caso.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1,[13]

---

[13] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp., et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.,*** 201 DPR 703 (2019).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[14]

**B.**

El Título VIII del Código Civil, 31 LPRA secs. 7301-7372, reglamenta lo concerniente a la patria potestad. En específico, el Art.

---

[14] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

589 del Código Civil, *supra* sec. 7241, define la patria potestad como "el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación".

Entretanto, el Capítulo III del referido Título establece las normativas estatutarias que rigen la suspensión del ejercicio y la privación de la titularidad de la patria potestad. En adelante, repasamos aquellas disposiciones relevantes a este caso.

El Art. 608 del Código Civil, *supra* sec. 7301, dispone que la suspensión o la privación de la patria potestad solo podrá determinarse mediante decreto judicial. Asimismo, establece que la privación procederá únicamente si el Estado demuestra que tiene un interés apremiante para la privación, mediante prueba clara robusta y convincente, y que no existe un medio menos oneroso que la privación. Íd.

Ahora bien, el Art. 610 del Código Civil, *supra* sec. 7303, decreta que, una vez se extinga la causa que justificó la determinación judicial, el progenitor tiene derecho a solicitar la restitución del ejercicio de la patria potestad **a menos que se le haya privado irreversiblemente de ella.**

Diferenciando entre la suspensión y la privación de la patria potestad, el Art. 611 del Código Civil, *supra* sec. 7311, enumera las siguientes causas para suspender el ejercicio de la patria potestad:

(a) la incapacidad o la ausencia declaradas judicialmente;
(b) el estado de enfermedad transitorio, si por ello el progenitor no puede ejercer efectivamente sus deberes y facultades respecto al hijo;
(c) la condena y encarcelación por delitos que no conllevan la privación irreversible de ella; o
(d) cualquier causa involuntaria que amenace la integridad física y emocional del hijo.

Sobre los efectos de la suspensión, el Art. 613 del Código Civil, *supra* sec. 7313, reglamenta que "[e]l progenitor a quien se suspende la patria potestad pierde, mientras dura la suspensión, el derecho de

tomar decisiones sobre la persona y los bienes de su hijo que haya determinado el tribunal". No obstante, conforme a dicho postulado, mantiene el derecho a relacionarse y la obligación de alimentarlo y velar por su bienestar. Íd.

En cambio, el Art. 614 del Código Civil, *supra* sec. 7321, crea dos tipos de privación: la temporal y la permanente. En particular, dispone lo siguiente:

> La privación de la patria potestad puede ser temporal o permanente. Si es temporal se rige por las normas de este título que regulan su suspensión. El tribunal determinará en cada caso el alcance de la privación, pero solo puede emitirse tal determinación si el Estado demuestra un interés apremiante y que no existe un medio menos oneroso para buscar el bienestar del hijo que la suspensión o privación de la patria potestad. Íd.

A su vez, el Art. 615 del Código Civil, *supra* sec. 7322, prescribe una serie de causas por las que un progenitor puede ser privado de la patria potestad. Estas son las siguientes:

> (a) causar daño, o poner en riesgo sustancial de sufrir daño o perjuicio predecible, a la salud física, mental o emocional del menor;
> (b) permitir o tolerar que otra persona incurra en la causal del inciso (a) de este artículo;
> (c) faltar a los deberes o dejar de ejercer las facultades de la patria potestad dispuestas en este Código;
> (d) faltar al deber de supervisión y cuidado del menor que se encuentra bajo la custodia de jure o de facto de otra persona:
>> (1) si teniendo la capacidad y los medios para hacerlo, no ha asumido el cuidado y la custodia del menor en su propio hogar;
>> (2) si no ha aportado una cantidad razonable para la manutención del menor, según su capacidad económica; o
>> (3) si no visita al menor o no mantiene contacto o comunicación regularmente con el menor o la persona que tiene su custodia de jure o de facto. Se excluyen de lo anteriormente dispuesto las personas que, por solo estar recluidas en una institución penal o de salud o por residir fuera de Puerto Rico, están impedidas de hacerlo, sin perjuicio de lo dispuesto en los incisos (c) y (f) de este artículo.
> (e) incurrir en el abandono voluntario del menor, sin causa justificada y donde se requiera la intervención de cualquier agencia estatal o municipal, o del tribunal, o de cualquier otra persona, porque haya dejado de cumplir su obligación de padre o madre;
> Se presume el abandono cuando el menor es hallado en circunstancias que hacen imposible conocer la identidad de sus progenitores o cuando, conociéndose su identidad, se ignora su paradero a pesar de las gestiones realizadas para localizarlos y dichos progenitores no reclaman al menor dentro de los treinta (30) días siguientes a haberse hallado al menor;

(f) explotar al menor obligándolo a realizar cualquier acto con el fin de lucrarse o de recibir algún otro beneficio;

(g) no cumplir con el plan de servicios para reintegrar un menor a su hogar, efectivamente ofrecido y brindado por la agencia estatal encargada de la protección de menores, o por otra persona designada por dicha agencia, para progenitores de menores que el Estado ha tenido que privar de la custodia de jure o de facto. Para privar a una persona de la patria potestad al amparo de este inciso, el tribunal deberá determinar que las condiciones que llevaron a la separación del menor del hogar de sus progenitores subsisten o existen condiciones similares que representan un serio riesgo para el bienestar del menor;

(h) incurrir en conducta que, de procesarse por la vía criminal, constituiría los delitos que se enumeran a continuación:

(1) maltrato y negligencia a menores;

(2) asesinato, homicidio u homicidio involuntario y la tentativa de estos, según estatuidos en el Código Penal de Puerto Rico;

(3) delitos contra la integridad corporal, según estatuidos en el Código Penal de Puerto Rico;

(4) incumplimiento de la obligación alimentaria, según estatuido en el Código Penal de Puerto Rico;

(5) abandono de menores, según estatuido en el Código Penal de Puerto Rico;

(6) secuestro de menores y secuestro agravado, según estatuidos en el Código Penal de Puerto Rico;

(7) privación ilegal de custodia, según estatuido en el Código Penal de Puerto Rico;

(8) adopción a cambio de dinero, según estatuido en el Código Penal de Puerto Rico;

(9) corrupción de menores, según estatuido en el Código Penal de Puerto Rico;

(10) seducción de menores a través de la Internet o medios electrónicos, según estatuido en el Código Penal de Puerto Rico;

(11) agresión sexual, según estatuido en el Código Penal de Puerto Rico;

(12) incesto, según estatuido en el Código Penal de Puerto Rico;

(13) actos lascivos, según se establece en el Código Penal de Puerto Rico;

(14) exposiciones obscenas, según se establece en el Código Penal de Puerto Rico;

(15) proxenetismo, rufianismo y comercio de personas agravado, según se establece en el Código Penal de Puerto Rico;

(16) obscenidad y pornografía infantil, según se establece en el Código Penal de Puerto Rico;

(17) restricción a la libertad en cualquiera de sus modalidades según se establece en el Código Penal de Puerto Rico; o

(18) maltrato, maltrato agravado, maltrato mediante amenaza, maltrato mediante restricción de la libertad, y la agresión sexual conyugal, según dispuesto en la ley especial de prevención contra la violencia doméstica.

Ninguna determinación de un tribunal al amparo de este inciso afectará un proceso criminal subsiguiente por los mismos hechos.

(i) haber sido convicto por alguno de los delitos enumerados anteriormente. Íd.

Por último, sobre los efectos de la privación de la patria potestad, el Art. 617 del Código Civil, *supra* sec. 7324, dispone lo siguiente:

> <u>Si la privación de la patria potestad es irreversible, perderá el progenitor todo derecho a tomar decisiones y a relacionarse con el hijo.</u> En este caso, el hijo queda bajo la custodia y el ejercicio exclusivo de la patria potestad del otro progenitor, si lo tiene. Si no lo tiene, el tribunal tomará las medidas cautelares para su protección hasta que sea colocado bajo la tutela correspondiente.
>
> Luego que advenga firme la sentencia, el hijo puede ser adoptado por otra persona o puede ser emancipado, si tiene la edad y reúne las condiciones legales para ello. (Subrayado nuestro).

**C.**

Las relaciones materno/paternofiliales son aquel derecho que corresponde naturalmente a los progenitores para comunicarse y relacionarse con sus hijos cuya custodia ha sido adjudicada a otra persona por resolución judicial. ***Sterzinger v. Ramírez,*** 116 DPR 762, 775 (1985). Este derecho tiene una naturaleza personal y familiar, contenido afectivo y una finalidad de favorecer y facilitar las más amplias relaciones humanas entre familiares. Íd. Como norma general de nuestro sistema, este derecho debe entenderse lo más liberalmente posible y, si bien puede ser regulado por los tribunales, no puede ser prohibido totalmente, excepto ante la existencia de causas muy graves. Íd.

A esto, huelga añadir que, tanto en nuestra jurisdicción como en la federal, la relación entre los progenitores y sus hijos está protegida constitucionalmente. ***Rexach v. Ramírez,*** 162 DPR 130, 146 (2004). En Puerto Rico, este derecho se examina bajo el marco de los derechos constitucionales a la intimidad y a la dignidad de todo ser humano, consagrados en las Secciones 1 y 8 del Art. II de la Constitución del Estado Libre Asociado. Art. II, Secs. 1 y 8, Const. ELA, LPRA Tomo 1; Íd., pág. 143; ***García Santiago v. Acosta,*** 104 DPR 321, 324 (1975). En la esfera federal, se evalúa conforme a la protección del derecho a la libertad bajo la Decimocuarta Enmienda

de la Constitución de los Estados Unidos, la cual impide que las personas sean privadas de su vida, libertad y propiedad sin el debido proceso de ley. Enmda. XIV, Const. EE. UU., LPRA, Tomo 1. Ello, porque, así como en nuestro ordenamiento, este derecho se considera fundamental.

Frente a los derechos y deberes de los progenitores, el Estado ostenta un deber de *parens patriae.* En ocasiones, este deber es superior a los derechos de los progenitores, ya sean estos la patria potestad, la custodia y las relaciones filiales, toda vez que el Estado posee un interés de salvaguardar y proteger el bienestar de los menores. ***Pena v. Pena,*** 164 DPR 949, 959 (2005). Este poder debe dirigirse, en su máxima plenitud, a fomentar la integridad de la familia. ***García Santiago v. Acosta,*** supra págs. 324-325.

Desde la posición de los tribunales, estamos llamados, gracias al deber de *parens patriae*, a regirnos por el mejor bienestar y los mejores intereses de los menores al resolver controversias que versan sobre la patria potestad y la custodia sobre estos. ***Muñoz Sánchez v. Báez de Jesús***, 195 DPR 645, 651 (2016); ***Rexach v. Ramírez,*** supra págs. 147-148; ***Rivera Ríos, Ex parte,*** 173 DPR 678, 682 (2008). De esta forma, si un tribunal percibe un conflicto entre intereses ajenos y el mejor interés de un menor, entonces debe resolver a favor del menor. Íd.; ***Ortiz v. Meléndez,*** 164 DPR 16, 28 (2005).

A esto último se suma que los intereses de los menores están revestidos de tal interés público que el Estado, en protección de dicho interés, tiene amplias facultades y discreción para actuar. ***Rivera Ríos, Ex parte,*** supra, pág. 682. No obstante, esta facultad no es absoluta, ni le permite al tribunal obviar los mandatos claros de la ley y la doctrina. Íd., pág. 682-683.

A su vez, un tribunal no puede actuar livianamente cuando tiene ante su consideración un litigio que versa sobre la custodia,

patria potestad o las relaciones materno/paternofiliales. ***Pena v. Pena,*** supra. Por ello, debe contar con la información más completa y variada posible en aras de resolver correctamente. Íd.

Por último, cabe destacar que las determinaciones sobre patria potestad y custodia de los tribunales no constituyen cosa juzgada, pero si establecen un estado de derecho que no debe alterarse a menos que se presenten circunstancias excepcionales. ***Rivera Ríos, Ex parte,*** supra pág. 682.

**IV.**

Tras un análisis objetivo, sereno y cuidadoso de la petición de *certiorari*, a la luz de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, nos abstenemos de ejercer nuestra función revisora. No atisbamos motivo o error alguno que amerite nuestra intervención en esta etapa del caso. La determinación del TPI es esencialmente correcta.

Surge palmariamente de la *Sentencia* dictada por el TPI en el caso LO2021RF00005 que el foro primario guardó silencio sobre el carácter de la privación de la patria potestad. Este es un hecho que, además, reconocen ambas partes en sus escritos. Por lo que, conforme al dictamen, no se resolvió si la señora Lozada París fue privada de la patria potestad de forma permanente e irreversible o de manera temporal. Esta distinción es un asunto determinante para discernir qué derecho tiene la parte recurrida para recobrar la relación maternofilial con la menor, lo cual solicitó en su reclamación. En su escrito, el peticionario nos invita a interpretar el silencio del TPI en dicha *Sentencia* y concluir que el foro primario le impuso a la señora Lozada París el medio más drástico que dispone nuestro Código Civil en este tema: la privación permanente de la patria potestad y la prohibición de las relaciones maternofiliales que ello implica. Bajo los hechos de este caso, esa conclusión es impermisible y supera los límites de la discreción judicial que

imponen tanto el Código Civil como la jurisprudencia al resolver controversias sobre la patria potestad relacionada a menores de edad.

Por un lado, estatutariamente, el Art. 614 del Código Civil, *supra*, establece que el tribunal determinará el alcance de la privación según el caso, pero sólo podrá hacerlo si el Estado demuestra un interés apremiante y que no existe un medio menos oneroso para buscar el bienestar del menor. De esta forma, el Código Civil, *supra*, añade un escrutinio más alto a la determinación de los tribunales respecto a la privación y su temporalidad o permanencia e irreversibilidad. Interpretar que los tribunales que guardan silencio sobre este tema privan permanentemente a los progenitores de la patria potestad no es cónsono con el espíritu de las referidas disposiciones del estatuto.

Por otro lado, la jurisprudencia exige que los tribunales deben regir su deber de *parens patriae* en beneficio del bienestar y mejor interés del menor y en dirección a fomentar la integridad de la familia. Llenar el vacío jurídico de la referida *Sentencia* y aplicar la más onerosa de las opciones contravendría el principio de nuestro ordenamiento que busca propender al restablecimiento de las relaciones materno/paternofiliales.

Es por lo anterior que, aún si ejerciéramos nuestra discreción para expedir el auto solicitado, confirmaríamos la determinación. Ante el silencio del foro inferior, es impermisible concluir que se impuso la más drástica de las opciones.

A similar conclusión llegó el foro primario en la *Orden* recurrida, destacando que, dentro del caso LO2021RF00005, no se desestimó de plano la solicitud de relaciones maternofiliales de la señora Lozada París, que sería lo procedente si la privación de la patria potestad fuera permanente e irreversible.

Dicho lo anterior, adviértase que, en la etapa en que se encuentra este caso, no estamos ante una adjudicación final concediendo las relaciones maternofiliales supervisadas, sino ante la denegatoria del foro primario de una solicitud de desestimación, en esta etapa temprana del caso, promovida bajo el argumento de que la referida *Sentencia* impide la adjudicación de la demanda presentada por la señora Lozada París. En otras palabras, aún resta que el TPI evalúe la reclamación de la parte recurrida en sus méritos.

**V.**

Por los fundamentos pormenorizados, se *deniega* la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. El Juez Sánchez Ramos disiente porque, para que una privación de patria potestad sea temporal, así debe haberse hecho constar de forma explícita por el tribunal. Al ello no haber ocurrido aquí, la privación de patria potestad es permanente y, por tanto, el Tribunal de Primera Instancia erró al no desestimar la acción de referencia.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones