RAMÓN GARCÍA SANTIAGO, SECRETARIO, DEPARTAMENTO DE SERVICIOS SOCIALES, demandante y recurrente, *v.* RAQUEL ACOSTA, demandada y recurrida.

*Número:* R-75-149         *Resuelto:* 4 de noviembre de 1975

*Miriam Naveira de Rodón, Procuradora General, Lirio Bernal de González, y Mario L. Paniagua, Procuradores Generales Auxiliares,* abogados del recurrente; *José Ramón Méndez Purcell, Teodora Echevarría* y *José R. León Hernández,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

■ Consuelo nació el 11 de septiembre de 1974, fruto de la fecundación por ultraje de una retardada mental de 15 años por un desconocido. Por entender que el bienestar de la recién nacida estaría en peligro de no tomarse acción inmediata, el Tribunal de Distrito, facultado por Ley Núm. 47 de 29 de mayo de 1973 (34 L.P.R.A. secs. 2101 y ss.) concedió la custodia *provisional* al Departamento de Servicios Sociales y se continuaron en el Superior los procedimientos dirigidos a impartirle permanencia al estado de custodia, a tenor del Art. 4 de la Ley Núm. 47 citada y la Núm. 97 de 23 de junio de 1955, según enmendada. (34 L.P.R.A. secs. 2001 y ss.) Después de oír prueba testifical y evaluar informes de los trabajadores sociales y de una sicóloga que designó, el Tribunal Superior denegó la solicitud del Estado y concedió la custodia a los abuelos de la niña. Al recurso de revisión expedimos orden para mostrar causa por la que no deba revocarse dicha actuación por revelar la prueba, contrario a las determinaciones del juez sentenciador "que las condiciones y el ambiente prevaleciente en el hogar de la madre de la menor no son las más adecuadas para la crianza de una niña de tierna edad." Ambas partes han comparecido, la representación legal de la abuela usando un lenguaje primitivo en que imputa al Procurador General tentativa de engañar a este Tribunal, llamando incapaces sin aducir fundamentos a los funcionarios de Servicios Sociales e involucrando

a los jueces en un símil sobre alcoholismo. (¹) La estatura moral e intelectual inherente al ejercicio de la abogacía impone un debate jurídico libre de personalismos y posiciones subjetivas que lo degraden a vulgar diatriba. (Cánones 9 y 35 de Etica Profesional.)

El juez sentenciador reconoció la insuficiencia de la joven madre (²) para tomar y cuidar su hija, pero optó por dejar ésta con los abuelos maternos. Al así decidir estaba remitiendo la tercera generación de esta familia a la misma suerte de las generaciones que la precedieron. El hogar de los abuelos es compartido por la madre de la menor, otra hija que padece retardación mental con sicosis, bajo tratamiento en el Hospital de Siquiatría de Ponce; otra hija de 17 años afectada de tuberculosis pulmonar recluida en el Hospital Antituberculoso de Cayey, a quien dan licencia para visitar la familia tres veces al año; una hija del primer matrimonio de la abuela quien es también retardada; y tres menores escolares. La abuela tendría que enfrentarse al reto de cuidar a Consuelo, hoy de un año de edad, en los azarosos primeros años de su vida, mientras cuida también de los hijos estudiantes y de tres hijas retardadas entre ellas una de 28 años de edad que requiere una vigilancia tan estricta que para poder comparecer al juicio su señora madre hubo de dejarla al cuidado de un niño de 11 años que perdió ese día de clases. (³) Hay en autos dos informes de trabajadores sociales que declaran la abuela inepta para manejar la aguda problemática del hogar por lo que ha caído en "actitud permisiva", y la descualifican totalmente para ejercer por ahora la custodia de la bebé fundados en datos categóricos. Hay

---

(¹) A la pág. 12, párrafo 2° de su alegato escribe:

". . . Si esto Señores Jueces es ser alcohólico, entonces todos en Puerto Rico somos alcohólicos, y me perdonen que no los excluya, ya que hasta en la boda de un hijo o una hija un abstemio rompe su Regla."

(²) Tiene una edad mental de 5 años con 3 meses.

(³) Así resulta de la prueba que descubre truncas e incompletas las determinaciones de hecho del tribunal a quo formuladas en sólo 33 líneas.

un informe sicológico que se limita a señalar, sin mayor especificación un "movimiento continuo al progreso y mejor estar" cuya confiabilidad es cuestionable, pues de la joven madre, una retardada con edad mental de 5 años con 3 meses que en las sesiones de adiestramiento no aprendió a bañar una muñeca ni a llenar una botella, dice que sus terribles limitaciones son sus "mayores ventajas". ([4])

En la sociedad democrática organizada alrededor de los derechos fundamentales del hombre, el Estado ha de reducir a un mínimo su intervención con sensitivas urdimbres emocionales como lo son las relaciones de familia. La intromisión en la vida privada sólo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado. No menos exige la Constitución del Estado Libre Asociado al declarar que la dignidad del ser humano es inviolable, y al condenar el discrimen por motivo de nacimiento, origen o condición social. Constitución, Art. II, Sec. 1. El poder de *parens patriae* debe dirigirse, en su máxima plenitud a fomentar la integridad de la familia, propiciando aquellos sentimientos de amor, de seguridad y de existencia feliz que fluyen naturalmente en el hogar donde se nace,

---

([4]) Dice el informe sicológico en lo pertinente:

"Del contenido de la entrevista, así como del comportamiento de Raquel en la misma me doy cuenta de que su habilidad para percatarse de una situación social y aprender de la misma es mayor de lo que ella inicialmente comunica. Es decir, que aunque Raquel carece de sofisticación en sus destrezas sociales, su habilidad para superar la falta de exposición o de aprendizaje de las mismas se constituye a mi juicio en una de sus mayores ventajas. Sin lugar a dudas, hay áreas, especialmente la académica, en que el aprendizaje de Raquel ha sido sumamente lento. Aquí conviene tener en cuenta que ella fue removida del segundo grado debido a que 'la trabajadora social dijo que era perder el tiempo.'

Resulta sumamente difícil predecir la capacidad de Raquel en estos momentos. Ahora, si se toma en consideración su interés y alta motivación como elementos de juicio principales, entonces la probabilidad de que la joven salga airosa en el aprendizaje de áreas definidas por *sus intereses* es muy alta." (Bastardillas en el original.)

bien sea un rancho o un palacio. Algunos han resistido la mudanza del arrabal a un moderno residencial público y optado por una rehabilitación de sus casas en el páramo urbano de sus afectos.

■ El hombre y su familia constituyen la célula de la unidad nacional que debe ser mejorada, educada y cultivada pero no escindida. De ahí la razón para que en nuestro régimen constitucional dicha facultad de *parens patriae* se ejerza con gran moderación y restricción innata frente a los intensos sentimientos naturales que por alto designio unen los miembros de la familia.

No obstante lo dicho habrá ocasión en que el Estado para preservar valores superantes, como el derecho a la vida, por excepción ha de intervenir con la integración formativa de la familia. Esa función de tutor por excelencia tiene su expresión en la Ley Núm. 97 (34 L.P.R.A. sec. 2001 y ss.) cuyo artículo confiere al Tribunal Superior autoridad sobre todo asunto relacionado con la custodia de cualquier niño; complementada por la Ley Núm. 47 (34 L.P.R.A. sec. 2101 y ss.) que provee un recurso de emergencia para intervenir con la custodia de un niño "cuya seguridad personal o buenas costumbres" estuvieren en peligro.

■ El presente caso no plantea la usual controversia entre parientes por la custodia de un menor. Introduce en el cuadro al Gobierno que propone escindir la familia y dar a esta niña la condición de pupilo del Estado. Notamos que la exposición de motivos de la Ley Núm. 97, *supra*, anuncia que su propósito es "privar provisional o permanentemente a los padres de la custodia de un niño sólo cuando el bienestar de éste o el interés público lo justifiquen, y brindarle en la medida que sea posible la orientación y atención que debió recibir en su hogar." (34 L.P.R.A. sec. 2001, Historial.) Aun dentro de los casos extremos debe hacerse un esfuerzo final por salvar la unidad familiar. La familia de cada ser

humano es su centro natural de existencia y al cercenamiento de esos lazos ha de llegarse sólo cuando elementos de abandono, corrupción o violencia hagan totalmente imposible la vida o el desarrollo moral del hijo. Nuestra sociedad erigida sobre una base de respeto a los derechos fundamentales del hombre y con una tradición profunda de cohesión familiar, devuelve al hogar aun a los convictos de crímenes que han merecido una libertad condicional. El mejoramiento y rehabilitación de la familia subdesarrollada es la encomienda legislada de Servicios Sociales. Al desmembramiento debe llegarse como recurso final ante una situación ineluctable. No estamos frente a tales circunstancias extremas que conduzcan a la deshumanización forzosa de las relaciones familiares. Esta legislación, por su peculiar impacto sobre sentimientos y emociones, ha de implementarse dentro de dimensiones humanas.

Los autos revelan que Servicios Sociales ejerce una supervisión paternal de esta infortunada familia, en ardua empresa por mejorarla. Debe continuar esa labor que es la razón genésica de ese Departamento. Su intervención en este caso tomando la niña recién nacida y preservando su salud y su vida en los primeros meses de su existencia ha cumplido a cabalidad la encomienda de ley. Para que no desmejore el humanitario esfuerzo gubernamental debe proveerse un período de transición en que la menor gane en fortaleza y desarrollo físico mientras se hacen los necesarios ajustes para su ingreso al regazo hogareño. El Departamento de Servicios Sociales debe terminar su custodia oficial y entregarla a los abuelos maternos para el 11 de septiembre de 1976, día en que la niña cumple dos años de edad; (5) salvo que surjan nuevas circunstancias agravantes que a juicio de su personal técnico pongan en riesgo la vida o

---

(5) Ninguna decisión en este campo es permanente. Está sujeta a modificación en cualquier momento para beneficiar los mejores intereses del niño (34 L.P.R.A. sec. 2013).

el desarrollo moral de esta criatura, haciendo de un todo imposible su permanencia en el hogar que le dio el destino.

*Revocada.*