Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| ISABEL MARIE GONZÁLEZ RUIZ<br><br>Apelada<br><br>v.<br><br>MARGARITA RUIZ<br><br>Apelante | KLAN202400419 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso núm.: AR2023RF00163 (102)<br><br>Sobre: Custodia-Relaciones Materno Filiales |
| --- | --- | --- |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece ante este tribunal apelativo, la Sra. Margarita Ruiz (señora Ruiz o apelante) mediante el recurso de *Apelación* de epígrafe y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI) el 20 de marzo de 2024, notificada el 25 de marzo siguiente. En este dictamen, el foro primario concedió relaciones maternofiliales a la Sra. Isabel González Ruiz (señora González Ruiz o apelada) sobre los menores Y.L.S.G. y Y.M.S.G.

Por los fundamentos que expondremos a continuación, revocamos la *Sentencia* apelada.

### I.

El 6 de marzo de 2023, la señora González Ruiz presentó ante el TPI una *Demanda en Solicitud de Relaciones Maternofiliales.*[1] En síntesis, esta solicitó al tribunal relaciones maternofiliales con sus hijos Y.L.S.G. y Y.M.S.G., pues alegó que las relaciones no pudieron

---

[1] Véase, Apéndice 1 del Recurso, en las págs. 1-2.

Número Identificador
SEN2024_____

llevarse a cabo porque la señora Ruiz, quien ostenta la custodia, impedía de manera injustificada que se lograran.[2]

El 7 de mayo de 2023, la señora Ruiz presentó ante el foro primario una *Contestación a demanda*.[3] En el aludido escrito, la apelante negó los hechos alegados por la señora González Ruiz y arguyó que, conforme el historial judicial donde incluso se expidió la Orden de Protección OPM2018-12, la apelada no ha probado que posee las cualidades protectoras para poder relacionarse con sus hijos. Por lo que, se oponía a que se ordenaran relaciones maternofiliales entre esta y los menores Y.L.S.G. y Y.M.S.G.[4]

Así las cosas, el 9 de mayo de 2023, notificada el 10 del mismo mes y año, el TPI emitió una *Orden sobre acuerdos y controversias*.[5] En resumen, el foro primario ordenó a las partes a reunirse de buena fe para lograr un tipo de propuesta o acuerdo.[6] No empece a lo anterior, el 11 de julio de 2023, las partes sometieron de manera conjunta una *Moción conjunta y en solicitud de referido a la Unidad Social*.[7] En el mencionado escrito, las partes alegaron que no pudieron llegar a un acuerdo por lo que dicho asunto debía referirse a la Unidad Social.[8]

Luego de varios trámites procesales, la Trabajadora Social Olinda Rivera López (en adelante Trabajadora Social) emitió al foro apelado un *Informe Social Forense* el 23 de octubre de 2023.[9] En este, la Trabajadora Social realizó una investigación extensa que incluyó:

> 1. Un resumen de los antecedentes legales y sociales.
> 2. Entrevistas realizadas a los miembros de la familia (entiéndase la señora González Ruiz, la señora Ruiz, el menor Y.L.S.G y la menor Y.M.S.G.).

---

[2] *Íd.*
[3] Véase, Apéndice 2 del Recurso, en las págs. 3-5.
[4] *Íd.*
[5] Véase, Apéndice 3 del Recurso, en la pág. 6.
[6] *Íd.*
[7] Véase, Apéndice 4 del Recurso, en la pág. 7.
[8] *Íd.*
[9] Véase, entrada 32 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

3. Se entrevistó a la Dra. Norma Gómez, Sicóloga de los menores y la Trabajadora Social Clínica, Denisse Mejías del Programa INSPIRA.
4. Revisiones y análisis de documentos y literatura.
5. La realización de un trasfondo Bio-psicosocial.[10]

Así las cosas, y luego de un juicio celebrado en su fondo el 18 de marzo de 2024, el TPI emitió el 20 de marzo de 2024, notificada el 25 de marzo siguiente, la *Sentencia* impugnada declarando *Ha Lugar* a la demanda y; en consecuencia, ordenó las relaciones maternofiliales.[11] En síntesis, el foro primario razonó que:

> En el balance de los mejores intereses de los menores y de los derechos de la Sra. González como madre de ellos, este tribunal entiende que una relación maternofilial limitada y supervisada vindica los derechos de la madre y provoca una sanación familiar que redunde en el mejor interés de los menores. Ciertamente, el informe social forense, aunque pretende reconocer de manera soslayada la importancia de las relaciones maternofiliales, no exploró ese ángulo con mayor profundidad para poder determinar cuán preparada est[á] la Sra. González para relacionarse con sus hijos y de qué manera podría hacerlo. Al enfocarse el informe en la óptica exclusiva de los menores, no permite espacio a otras posibles opciones que también puedan redundar en los mejores intereses de ellos. La Dra. Ríos Arocho debió ser ese otro profesional de la salud consultado que permitiera balancear el informe social forense para beneficio del tribunal. Si ha de ser importante determinar si la Sra. González tiene capacidades protectoras, pues también lo es para este tribunal tener la posición de la profesional de la salud mental que la trata. De esta manera se hubiera sabido si concurría con la psicóloga de los menores o si por el contrario ofrecía otra opinión profesional.[12]

Por tal razón, el foro primario concedió a la señora González Ruiz relaciones maternofiliales respecto a los menores Y.L.S.G. y Y.M.S.G.[13] A su vez, el foro *a quo* estructuró un Plan de Relaciones Maternofiliales el cual establecía lo siguiente:

> Las relaciones maternofiliales se llevarán a cabo un mes sí y un mes no para un máximo de 6 ocasiones al año, pero nunca menos de 3 ocasiones al año. Estas relaciones maternofiliales se llevarán a cabo en un ambiente terapéutico supervisado por profesionales de la salud mental. El máximo de tiempo en que se estará relacionado la Sra. González con los menores en los momentos en que se reúna con ellos será de dos (2) horas, pero nunca menos de una (1) hora.

---

[10] Véase, Apéndice 9 del Recurso, en la pág. 15.
[11] *Íd.*, en las págs. 12-16.
[12] *Íd.*
[13] *Íd.*

> Los profesionales de la salud mental que le brinden servicios a los menores y a la Sra. González mantendrán comunicación estrecha y continua sobre la condición de salud mental de ellos con el propósito de lograr las más eficientes y efectivas relaciones maternofiliales. Por tanto, la Sra. González y la Sra. Ruiz, en unión a los profesionales de la salud mental, incluyendo al profesional de la salud mental de los menores, coordinarán el día, hora, lugar, forma y manera en que se estará relacionando la Sra. González con los menores.[14]

Inconforme con la determinación, la señora Ruiz presentó una *Reconsideración* el 6 de abril de 2024.[15] En el pedido, la apelante alegó, en síntesis, que erró el TPI al dictar una sentencia concediéndole relaciones maternofiliales a la señora González Ruiz, pues conforme a el *Informe Social Forense* y a nuestro ordenamiento jurídico, no procedían las relaciones.[16] Por su parte, la apelada instó una *Moción oposición a reconsideración* el 11 de abril de 2024.[17] El 12 de abril de 2024, el TPI emitió una *Resolución* declarando sin lugar la *Reconsideración* presentada por la apelante.[18]

Todavía en desacuerdo, la señora Ruiz acude ante esta *Curia* mediante el recurso de *Apelación* de epígrafe imputándole al foro primario la comisión de los siguientes errores:

**PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA [INSTANCIA], AL EMITIR UNA SENTENCIA DECLARANDO HA LUGAR LA DEMANDA Y ESTABLECIENDO RELACIONES MATERNOFILIALES LIMITADAS, SIN QUE ANTES LAS PROFESIONALES DE SALUD MENTAL (PSICÓLOGAS) DETERMINARAN SI LA MADRE POSEE CAPACIDADES PROTECTORAS Y SI LAS RELACIONES PROPENDEN EN EL MEJOR BIENESTAR DE LOS MENORES.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, AL ESTABLECER UNAS RELACIONES MATERNOFILIALES, SIN TOMAR EN CONSIDERACIÓN LAS SITUACIONES DE VIOLENCIA FÍSICA Y EMOCIONAL VIVIDAS POR LOS MENORES, SU ESTADO EMOCIONAL, SUS PREFERENCIAS Y LAS RECOMENDACIONES OFRECIDAS POR LA TRABAJADORA SOCIAL y ASIGNADA AL CASO.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, AL CONCLUIR QUE AL OSTENTAR LA

---

[14] *Íd.*
[15] Véase, Apéndice 10 del Recurso, en las págs. 17-25.
[16] *Íd.*
[17] Véase, Apéndice 11 del Recurso, en las págs. 26-28.
[18] Véase, Apéndice 12 del Recurso, en las págs. 29-30.

PATRIA POTESTAD LA MADRE, YA DE POR SÍ, ELLO LE DA DERECHO A TENER RELACIONES MATERNOFILIALES, AUN DE FORMA LIMITADA.

**CUARTO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU APRECIACIÓN DE LA PRUEBA, AL DESCARTAR LA PRUEBA PERICIAL Y NO CONTOVERTIDA POR LA PARTE APELADA.

El 6 de mayo de 2024, emitimos una *Resolución* concediéndole a la parte apelada el término de treinta (30) para expresarse. Asimismo, el 14 de mayo, en respuesta a un escrito presentado por la parte apelante, ordenamos al TPI a someter la regrabación de los procedimientos celebrados el 18 de marzo de 2024. El 16 de mayo de 2024, el TPI cumplió con lo ordenado y el 23 siguiente, la parte apelada presentó su *Alegato Parte Apelada.* Así, nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes, el expediente apelativo y escuchada la regrabación de los procedimientos; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### *Patria Potestad*

La *Patria Potestad* es el conjunto de deberes y derechos que poseen los progenitores sobre la persona y bienes de sus hijos, desde que estos nacen hasta que adquieren la mayoría de edad o son emancipados. Artículo 589 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 7241; *Ex parte Torres*, 118 DPR 469, 473 (1987). A raíz de tan importante rol, nuestro ordenamiento jurídico ha establecido los siguientes deberes y derechos que poseen los progenitores con patria potestad sobre sus hijos:

(a) velar por él y tenerlo en su compañía;
(b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral;
(c) inculcarle valores y buenos hábitos de convivencia y el respeto a sí mismo y hacia los demás;
(d) corregirlo y disciplinarlo según su edad y madurez intelectual y emocional y castigarlo moderadamente o de una manera razonable;

y (e) representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandado.[19]

La patria potestad conlleva la obligación de ejercerla de una manera responsable, y conforme lo establece la ley, cuando se atenta con la misma o se encuentra en amenaza o peligro la integridad física, mental o emocional del hijo, el progenitor o progenitores que poseen patria potestad pueden acudir a los tribunales a solicitar auxilio. Artículos 591 y 592 del Código Civil de Puerto Rico 2020, 31 LPRA secs. 7243 y 7251.

La custodia, por su parte, es la convivencia o control físico que tiene un progenitor sobre su hijo. *Depto. Familia v. Cacho González*, 188 DPR 773, 782-783 (2013). Esta puede ser ejercida por ambos progenitores de manera compartida o por un solo progenitor. Artículos 602 y 606 del Código Civil de Puerto Rico 2020, 31 LPRA secs. 7281 y 7285.

Nuestro ordenamiento jurídico ha expresado que la patria potestad puede ser suspendida por diferentes razones, estas son:

(a) la incapacidad o la ausencia declaradas judicialmente;
(b) el estado de enfermedad transitorio, si por ello el progenitor no puede ejercer efectivamente sus deberes y facultades respecto al hijo;
(c) la condena y encarcelación por delitos que no conllevan la privación irreversible de ella;
o (d) cualquier causa involuntaria que amenace la integridad física y emocional del hijo.[20]

El efecto que conlleva la suspensión de la patria potestad es la pérdida temporal del progenitor que la ostentaba de tomar decisiones sobre la persona y los bienes de su hijo que hayan sido determinados por el tribunal, no pese a lo anterior, este progenitor conservará el derecho de relacionarse con el menor, alimentarlo y velar por su bienestar. Artículo 613 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 7313.

---

[19] Artículo 590 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 7242.
[20] Artículo 611 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 7311.

La suspensión o privación de la patria potestad solo puede determinarse mediante un decreto judicial y solo procederá cuando el Estado demuestre un interés apremiante mediante prueba clara, robusta y convincente de que no existe un remedio menos oneroso que la privación de la patria potestad. Artículo 608 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 730; *Figueroa Ferrer v. ELA*, 107 DPR 250, 275 (1978). Esto es así pues nuestro ordenamiento jurídico ha establecido que:

> [e]n la sociedad democrática organizada alrededor de los derechos fundamentales del hombre, **el Estado ha de reducir a un mínimo su intervención con sensitivas urdimbres emocionales como lo son las relaciones de familia. La intromisión en la vida privada solo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado.** No menos exige la Constitución del Estado Libre Asociado al declarar que la dignidad del ser humano es inviolable, y al condenar el discrimen por motivo de nacimiento, origen o condición social.[21] (Énfasis nuestro)

### Relaciones Paternofiliales o maternofiliales

El Tribunal Supremo ha definido las relaciones paternofiliales o maternofiliales como aquel derecho que corresponde por naturaleza a un progenitor para comunicarse y relacionarse con sus hijos que por resolución judicial no posean su custodia. *Sterzinger v. Ramírez*, 116 DPR 762, 775 (1985). Su finalidad es promover y facilitar amplitud en las relaciones humanas entre familiares. *Íd.*

Cuando los progenitores no se ponen de acuerdo de cómo se deben llevar estas visitas para relacionarse con el menor, los tribunales determinarán el tiempo, modo y lugar donde se llevarán a cabo estas. Artículo 618 del Código Civil de Puerto Rico 2020, 31 LPRA sec.7331. En los casos que sea necesario proteger la integridad física y emocional del menor, los tribunales pueden limitar o suspender las relaciones "...si existen circunstancias

---

[21] *Depto. Familia v. Cacho González*, 188 DPR 773, 784-785 (2013); *García Santiago v. Acosta*, 104 DPR 321, 324 (1975); Art. II, Sec. 1, Const. ELA PR, LPRA, Tomo 1.

graves que así lo aconsejen o si el progenitor incumple reiteradamente los deberes impuestos en la sentencia o reconocidos [en el Código Civil]". *Íd.* De igual forma, es norma reiterada que:

> [e]l derecho a mantener relaciones con sus hijos es tan importante que los tribunales pueden regular las relaciones paterno-filiales, pero no pueden prohibirlas totalmente, a menos que existan causas muy graves para hacerlo.[22]

### *Carta de los Derechos del Niño*

La *Carta de los Derechos del Niño*, Ley núm.338 del 1998, 1 LPRA sec. 412 nota, establece una compilación de derechos reconocidos a los menores por la Constitución del Estado Libre Asociado de Puerto Rico, el Tribunal Supremo y diferentes estatutos. En síntesis, estos son algunos de los derechos que han sido reconocidos a los menores:

> [...]
> 3. Vivir en un ambiente adecuado en el hogar de sus padres y en familias donde se satisfagan sus necesidades físicas y disfrutar el cuidado, afecto y protección que garantice su pleno desarrollo físico, mental, espiritual, social y moral.
>
> 4. Ser protegido por el Estado de cualquier forma de maltrato o negligencia que provenga de sus padres o de personas que lo tengan bajo su cuidado.
>
> 5. Disfrutar del cuidado y protección del Estado cuando sus padres y familiares no asuman o se vean imposibilitados de asumir dicha responsabilidad.
>
> 6. No ser separado de su hogar propio a menos que, a través de un proceso judicial, se pruebe que la separación es para el bienestar y el mejor interés del menor.
>
> 7. Que cuando un niño sea separado de su hogar, el Estado tomará las medidas necesarias y planificará de forma permanente para su cuidado, según las disposiciones legales aplicables.
>
> 8. A que las primeras alternativas que se consideren en sustitución de su propio hogar, sea un hogar de familiares idóneos, un hogar adoptivo o un hogar sustituto donde reciba el afecto y los cuidados inherentes a su edad y condición.
>
> [...]
> 10. Excepto cuando sea adoptado por personas ajenas a la familia, continuar relacionándose con aquellos miembros de la familia que tienen significación para él o ella cuando la separación ocurra por muerte de uno

---

[22] *Sterzinger v. Ramírez*, 116 DPR 762, 775 (1985).

de los progenitores o por divorcio siempre que la relación sea en su mejor interés.

[…]
12. A reconstruir su vida sin la presión emocional que representa el establecimiento de relaciones filiales con el progenitor que le ha hecho víctima del abuso sexual, siempre que así sea recomendado por expertos en la conducta humana.

13. No ser devuelto al hogar donde ha sido víctima de maltrato, explotación, negligencia o abuso sexual sin que exista una evaluación de profesionales de la conducta humana competentes, de la agencia de gobierno pertinente, que recomienden que dicha acción es en el mejor interés del menor.

14. En los procesos antes los Tribunales, en materias que afecten su estado, condición o circunstancias, tendrá derecho a ser escuchado y a recibir el debido reconocimiento, siempre y cuando los factores relacionados a su edad, capacidad y nivel de madurez lo permitan.

15. Que el Tribunal designe un representante que vele por su bienestar y sus mejores intereses en los procesos sobre custodia y privación de la patria potestad cuando ha sido víctima del maltrato, explotación, negligencia o abuso sexual. El defensor no sólo lo representará en el Tribunal, sino que velará por la agilización de los procesos en la agencia pública o privada que deba hacer las determinaciones permanentes sobre su cuidado.

16. Ser protegido por el Estado en cualquier acto de secuestro por parte de un padre, familiar o tercera persona.

[…]
21. A disfrutar un ambiente seguro, libre de ataques a su integridad física, mental o emocional en todas las instituciones de enseñanza, públicas y privadas, a lo largo de sus años de estudios primarios, secundarios y vocacionales hasta donde las facilidades del Estado lo permitan.[23]
[…]

### Deferencia Judicial

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR

---

[23] Artículo 2 de la Ley núm.338 del 1998, *Carta de los Derechos del Niño,* 1 LPRA sec. 412.

799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009). Solo intervendremos con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002); *Pueblo v. Maisonave,* 129 DPR 49, 62-63 (1991).

Debemos destacar que la norma de deferencia judicial no abarca la evaluación de prueba documental o pericial, debido a que en estos casos el foro apelativo se encuentra en las mismas condiciones que el foro de primera instancia. Por tal razón, los tribunales apelativos pueden adoptar su propio criterio en cuanto al valor probatorio de ese tipo de prueba. *Rebollo v. Yiyi Motors,* 161 DPR 69, 79 (2004).

**III.**

La apelante señaló que erró el TPI al conceder relaciones maternofiliales a la señora González Ruiz sin antes que una profesional de salud mental certificara si posee capacidades protectoras y si las relaciones ponderan en el mejor bienestar de los menores. De igual forma, nos apuntaló que erró el foro primario al establecerlas sin antes tomar en consideración las situaciones de violencia física y emocional vividas por los menores, el estado emocional de los mismos, sus preferencias y las recomendaciones hechas por la Trabajadora Social asignada al caso.

Por otro lado, la señora Ruiz indicó que erró el TPI al concluir que al ostentar la patria potestad la madre, ya de por sí, le da derecho a la parte apelada a tener relaciones maternofiliales, aún de

forma limitada. Finalmente, esta expuso que erró el foro *a quo* en su apreciación de la prueba, al descartar la prueba pericial presentada y no controvertida por la parte apelada. Al tratarse de señalamientos de error similares entre sí, procedemos a discutirlos en conjunto.

De entrada, nuestro ordenamiento jurídico ha reconocido que como parte de los derechos constitucionales y deberes que ostentan los padres que poseen patria potestad está el velar y tener a su hijo en su compañía.[24] En los casos donde este progenitor no posea custodia, este podrá tener relaciones paternofiliales o maternofiliales con su hijo según acuerden los progenitores o lo dictamine un tribunal.[25] No pese lo anterior, nuestro ordenamiento jurídico, debido al alto interés público revestido al mejor bienestar de los menores, ha reconocido que estas relaciones paternofiliales o maternofiliales pueden regularse o incluso prohibirse si existen causas graves que atenten contra el bienestar del menor.[26]

En el caso ante nuestra consideración, el TPI emitió la *Sentencia* apelada donde le concedió a la señora González Ruiz relaciones maternofiliales sobre los menores Y.L.S.G. y Y.M.S.G. pues concluyó que esto vindicaría los derechos de la madre y crearía una sanación familiar que redundaría en el mejor interés de los menores.[27] Luego de revisado el expediente del caso, el *Informe Social Forense* y de haber escuchado la vista celebrada el 18 de marzo de 2024, entendemos que la decisión emitida por el foro primario no redunda en el mejor interés y bienestar de los menores. Más aún, colegimos que permitir de manera abrupta las relaciones

---

[24] Véase, el Artículo 589 del Código Civil de Puerto Rico 2020, 31 LPRA sec.7241; *Ex parte Torres*, 118 DPR 469, 473 (1987); y el Artículo 590 del Código Civil de Puerto Rico 2020, 31 LPRA sec.7242.
[25] Véase, el Artículo 618 del Código Civil de Puerto Rico 2020, 31 LPRA sec.7331.
[26] Véase, el Artículo 2 de la Ley núm.338 del 1998, *Carta de los Derechos del Niño*, 1 LPRA sec.412; *Sterzinger v. Ramírez*, 116 DPR 762, 775 (1985); *Depto. Familia v. Cacho González*, 188 DPR 773, 784-785 (2013); *García Santiago v. Acosta*, 104 DPR 321, 324 (1975); Art. II, Sec. 1, Const. ELA PR, LPRA, Tomo 1.
[27] Véase, Apéndice 9 del Recurso, en las págs. 12-16.

maternofiliales entre la señora González Ruiz y los menores Y.L.S.G. y Y.M.S.G. significaría un fracaso a la justicia. Veamos.

En primer lugar, debemos advertir que **no surge** del expediente judicial, del *Informe Social Forense,* ni de la vista celebrada el 18 de marzo de 2024, **un certificado de parte de un profesional de la salud mental que certifique cuál es el cuadro psicológico de la señora González Ruiz y si la misma cuenta con *capacidades protectoras* que le permitan relacionarse con los menores de edad**. Sin embargo, se hizo constar que la señora González Ruiz comenzó a asistir a terapias con la Dra. Yesenia Ríos Arrocho el 13 de octubre de 2023, 10 días antes de que se finalizara la confección del *Informe Social Forense.*[28]

Incluso, el foro primario reconoce en el dictamen apelado de **la necesidad de contar con la posición del profesional de la salud mental, en este caso la Dra. Yesenia Ríos Arrocho, para determinar las capacidades protectoras de la señora González Ruiz y aún así, decidió otorgarle relaciones maternofiliales de manera supervisada**.[29] Nos parece que, **tomando en consideración el historial de maltrato en el núcleo familiar**[30], **la falta de comunicación habida entre la madre y los hijos**[31] y **el cuadro psicológico de uno de los menores**[32], es sumamente meritorio que el TPI contara con una certificación por parte de la Dra. Yesenia Ríos Arrocho, o un profesional de la salud mental, sobre las capacidades protectoras de la señora González Ruiz ***antes de otorgar relaciones maternofiliales***. El no hacerlo de esta manera estaría exponiendo a los menores a sufrir un gran daño en su bienestar. Esto, ya que surge del *Informe Social Forense* que los

---

[28] Véase, entrada 32 de SUMAC; Apéndice 8 del Recurso, en la pág. 11.
[29] Véase, Apéndice 9 del Recurso, en las págs. 12-16.
[30] Véase, entrada 32 de SUMAC en las págs.5-6, 11-12.
[31] Véase, la grabación de la Vista celebrada el 18 de marzo de 2024 1:58:50 pm-1:59:05 pm; 2:08:38 pm; 2:10:00 pm.
[32] Véase, entrada 32 de SUMAC, en las págs.12-14.

menores en la actualidad se encuentran en buen estado y el proceso de relacionarse con la señora González Ruiz les causa "coraje, preocupación y miedo".[33]

Por otro lado, nos parece transcendental apuntalar que **ordenar las relaciones maternofiliales de manera abrupta no propende en el interés óptimo de los menores**. Al respecto, surge del *Informe Social Forense* que los menores, de 15 y 14 años de edad, han expresado que **no desean relacionarse con la señora González Ruiz pues no la consideran una figura maternal**.[34] De igual forma, surge del *Informe Social Forense* que los menores **recuerdan el maltrato físico sufrido**.[35] Incluso, desde el **2019 no ha existido algún tipo de relación entre los menores y la señora González Ruiz**.[36] Teniendo en consideración lo anteriormente mencionado, nos parece que antes de ordenar las relaciones maternofiliales entre la señora González Ruiz y los menores debe existir un periodo transicional donde la apelada y los menores se encuentren preparados para formar una relación.

Asimismo, es importante enfatizar que revisado el legajo judicial y habiendo escuchado la vista celebrada el 18 de marzo de 2024, el testimonio de la señora González Ruiz, a nuestro juicio, no fue suficiente para controvertir el *Informe Social Forense* preparado por la propia perito del tribunal, la Trabajadora Social Olinda Rivera López.  Por lo que, no encontramos razón por lo cual el TPI declinó acoger las recomendaciones formuladas por esta en su informe.

En resumen, resulta forzoso revocar la *Sentencia* recurrida tomando en consideración los siguientes factores:

> 1. El caso no cuenta con una certificación por parte de un profesional de la salud mental, en este caso la Dra. Yesenia Ríos Arrocho, de que la señora González Ruiz

---

[33] *Íd.*, en las págs. 9-14.
[34] Véase, entrada 32 de SUMAC, en las págs.8-9.
[35] *Íd.*
[36] Véase, la grabación de la Vista celebrada el 18 de marzo de 2024 1:58:50 pm-1:59:05 pm; 2:08:38 pm; 2:10:00 pm.

cuenta con las capacidades protectoras para poder relacionarse con los menores;

2. La existencia de un historial de maltrato en el núcleo familiar[37];

3. La falta de comunicación habida entre la madre y los hijos desde el 2019[38];

4. El cuadro psicológico de uno de los menores[39];

5. El deseo de los menores de no relacionarse con la señora González Ruiz[40];

6. La recomendación de la Dra. Norma Gómez, Psicóloga de los menores, que se encuentra en el *Informe Social Forense*, de que los menores no sean expuestos a ver a su madre porque les causa "coraje, preocupación y miedo"[41];

7. A pesar del TPI contar con un *Informe Social Forense*, en donde de la investigación realizada por la Trabajadora Social Olinda Rivera López se expone que los menores no desean tener una relación con la mamá, este no celebra una vista evidenciaria en donde entrevistara a los propios menores para saber su sentir respecto al asunto[42];

8. La recomendación de la Trabajadora Social Olinda Rivera López de mantener las relaciones maternofiliales suspendidas luego de haber realizado el *Informe Social Forense,* sin que su recomendación haya sido impugnada o controvertida.[43]

Aunque reconocemos que, como bien expone el TPI en su sentencia, la madre posee unos derechos y unos deberes que emanan de la patria potestad, también es cierto el hecho de que el foro primario debió actuar en sus facultades para garantizar el mejor interés y bienestar de los menores ante un cuadro fáctico difícil y preocupante como este. Por ello, otorgar relaciones maternofiliales a la señora González Ruiz, teniendo en consideración los factores anteriormente esbozados, no redunda en el mejor interés y bienestar de los menores.

En fin, concluimos que el TPI incurrió en los errores imputados.

---

[37] Véase, entrada 32 de SUMAC, en las págs.5-6, 11-12.

[38] Véase, la grabación de la Vista celebrada el 18 de marzo de 2024 1:58:50 pm-1:59:05 pm; 2:08:38 pm; 2:10:00 pm.

[39] Véase, entrada 32 de SUMAC, en las págs.12-14.

[40] *Íd.*, en las págs. 8-9.

[41] *Íd.*, en las págs. 12-13.

[42] *Íd.* en las págs. 8-9,12-13,14-15.

[43] *Íd.* en las págs.14-15.

**IV.**

Por los fundamentos antes expuestos, revocamos la *Sentencia* apelada. En su lugar, acogemos las recomendaciones detalladas en el *Informe Social Forense.*

Por tanto, se mantendrán suspendidas las relaciones maternofiliales entre la señora González Ruiz y los menores Y.L.S.G. y Y.M.S.G. Asimismo, la apelada continuará recibiendo tratamiento psicológico. Al respecto, un profesional de la salud mental deberá certificar al TPI que la señora González Ruiz posee las capacidades protectoras para poder relacionarse con los menores.

De igual manera, los menores continuarán recibiendo tratamiento terapéutico. Las señoras González Ruiz y Ruiz deben autorizar a los terapistas realizar discusiones de los casos entre sí.

De otro lado, luego de recibir la autorización de las partes, los terapistas de la señora González Ruiz y de los menores realizarán discusiones de los casos y deben determinar, teniendo en consideración el sentir de los menores y contando con una certificación de que la madre cuenta con capacidades protectoras, en qué momento estos estarán preparados para comenzar a realizarse terapias en familia, de ser posible.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones