ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **CARMEN V. PÉREZ CURET**<br>APELANTE(S)-RECURRENTE(S)<br><br><br>V.<br><br><br>**DEPARTAMENTO DE LA FAMILIA**<br>APELADA(S)-RECURRIDA(S) | **KLRA202400152** | ***REVISIÓN DE DECISIÓN ADMINISTRATIVA***<br>procedente de la Junta Adjudicativa del **DEPARTAMENTO DE LA FAMILIA**<br><br>Civil Núm.:<br>**2023-PPSF-00061**<br><br><br>Sobre:<br>Extender Pago de Subvención |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 5 de septiembre de 2025.

Comparece ante este Tribunal de Apelaciones, la señora **CARMEN V. PÉREZ CURET** (señora **PÉREZ CURET**) mediante una *Revisión Judicial* incoada el 25 de marzo de 2024. En su recurso, nos solicita que revisemos la *Resolución* promulgada el 31 de enero de 2024 por la **JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA (JUNTA)**.[1] Mediante esta determinación administrativa, entre otras, se confirmó la *Acción de Denegación* emitida por la **ADMINISTRACIÓN DE FAMILIAS Y NIÑOS (ADFAN)** del **DEPARTAMENTO DE LA FAMILIA**, Oficina Regional de Bayamón.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 31 de enero de 2024. Apéndice de la *Revisión Judicial,* págs. 33- 35.

**- I -**

El 1 de febrero de 2023, la **ADFAN** le cursó una misiva a la señora **PÉREZ CURET** en la cual expuso: "[n]o consideramos que existan los criterios para extender el pago de subvención. Confirmamos la decisión tomada por la oficina local".[2]

En desacuerdo, el 16 de febrero de 2023, la señora **PÉREZ CURET** presentó una *Apelación Administrativa* ante la **JUNTA**.[3] Esencialmente, infirió que la **ADFAN** desacertó al no extenderle el pago de la subvención a los jóvenes Eddie García Sáez y Caleb Sáez Rodríguez hasta que estos alcanzaran la mayoría de edad (21 años).

Luego de varios incidentes procesales, el 13 de noviembre de 2023, se celebró una vista administrativa. En la audiencia, testificaron las señoras **PÉREZ CURET**, Evelyn Ramos Santos y Vanessa Santana Concepción.

**Testimonio de la señora Carmen Pérez Curet**

Esta narró que es madre de hogar de crianza desde hace veinticinco (25) años y le quedan aún dos (2) hijos de crianza.[4] Manifestó que conoce a Eddie desde que tenía tres (3) añitos y a Caleb desde que tenía cuatro (4) años.[5] Declaró que visitó la Clínica Doctor Merlos; le dieron una certificación de que el menor tomaba medicamentos y tenía problemas. Entregó dicha certificación a la señora Jessica Pérez.[6] Esta certificación precisa que Caleb tiene trastorno, déficit de atención e hiperactividad.[7] La Certificación de 22 de diciembre de 2020 fue entregada a la señora Vanessa Pérez.[8] Esta Certificación indica que tiene trastorno de déficit de atención, de hiperactividad contiguo combinado, trastorno analizado en desarrollo de lo específico y autismo.[9] Alegó que realizó varias gestiones y nunca recibió contestación. Se reunió con las señoras Evelyn Ramos, Jessica Pérez y Vanessa Pérez durante el año 2021.[10] Aludió que entregó los récords a la señora

---

[2] Apéndice de la *Revisión Judicial*, págs. 1- 5.
[3] *Id.*, págs. 6- 13.
[4] *Transcripción de la Prueba Oral*, pág. 9, líneas 15- 20.
[5] *Transcripción de la Prueba Oral*, pág. 10, líneas 3- 4.
[6] *Transcripción de la Prueba Oral*, pág. 18, líneas 19- 25.
[7] *Transcripción de la Prueba Oral*, pág. 20, líneas 7- 8. Marcado como Exhibit 5 con fecha de 13 de febrero de 2020.
[8] Marcado como Exhibit 6 concerniente a Eddie García Sáez.
[9] *Transcripción de la Prueba Oral*, pág. 21, líneas 4- 7.
[10] *Transcripción de la Prueba Oral*, pág. 24, líneas 13- 24.

Glorimar Villanueva.[11] Aludió que incurrió en gastos de graduación de cuarto año para ambos jóvenes; paga los gastos de comestibles y medicamentos dado que el plan de la Reforma no los cubre.[12] Caleb asistió a dos (2) universidades (Interamericana y EDP College); y tomó el examen para ingresar al Navy, pero no aprobó.[13] Señaló que el Departamento de Educación le pagaba los gastos médicos, medicamentos y las terapias a Eddie.[14] La mensualidad de Caleb era $459.00; y de Eddie era $700.00 por su condición de autismo.[15] Arguyó que tienen condición incapacitante por las evaluaciones del doctor Merlos y las de la escuela hechas a Eddie.[16]

### Testimonio de la señora Evelyn Ramos Santos

Testificó que funge como trabajadora social del **DEPARTAMENTO DE LA FAMILIA** desde hace veinticinco (25) años. Actualmente funge como supervisora regional.[17] Los asuntos fiscales tienen que ser aprobados por las oficinas locales o supervisor regional.[18] La normativa contempla que una tutela subvencionada es hasta los dieciocho (18) años de edad. Por vía excepción, se puede extender hasta los veintiún (21) años en caso de condición física o mental incapacitante.[19] Reconoció que los documentos preparados por los facultativos que evalúan son quienes determinan que si una condición es incapacitante.[20] Aclaró que los menores con tutela subvencionada no están bajo la custodia del Departamento de la Familia. Anualmente, deben renovar sus documentos para que se le pueda otorgar la subvención.[21] Enunció que el 9 de junio de 2021, se reunió con la señora Pérez Curet.[22] Se le hizo llegar una evaluación realizada en abril de 2022 a Eddie que confirma que tiene autismo I y déficit de atención con hiperactividad.[23] Ninguno de los documentos, notas, certificación o evaluación menciona incapacidad.[24] Los casos fueron consultados con la señora Sandra Rosario (especialista a nivel central).[25] El propósito de la subvención es ayudar al

---

[11] *Transcripción de la Prueba Oral*, pág. 28, líneas 9- 22. Marcado como Exhibit 7 expediente médico de la Clínica del Dr. Merlos y Asociados de Caleb que consta de 45 páginas; y Exhibit 8 expediente médico de la Clínica del Dr. Merlos y Asociados de Eddie que consta de 54 páginas.

[12] *Transcripción de la Prueba Oral*, pág. 32, línea 18- pág. 34, línea 5.

[13] *Transcripción de la Prueba Oral*, pág. 36, líneas 3- 7.

[14] *Transcripción de la Prueba Oral*, pág. 52, líneas 8- 12.

[15] *Transcripción de la Prueba Oral*, pág. 54, línea 21- pág. 55, línea 3.

[16] *Transcripción de la Prueba Oral*, pág. 60, líneas 17- pág. 61, línea 2.

[17] *Transcripción de la Prueba Oral*, pág. 62, líneas 2- 11.

[18] *Transcripción de la Prueba Oral*, pág. 64, líneas 1- 10.

[19] *Transcripción de la Prueba Oral*, pág. 67, línea 20- pág. 68, línea 2.

[20] *Transcripción de la Prueba Oral*, pág. 68, líneas 17- 25.

[21] *Transcripción de la Prueba Oral*, pág. 69, líneas 16- 24.

[22] *Transcripción de la Prueba Oral*, pág. 70, líneas 11- 13.

[23] *Transcripción de la Prueba Oral*, pág. 72, línea 20- pág. 73, línea 5.

[24] *Transcripción de la Prueba Oral*, pág. 73, líneas 20- pág. 74, línea 1.

[25] *Transcripción de la Prueba Oral*, pág. 74, líneas 5- 10.

recurso con todos los gastos de tratamientos, servicios, o recursos del menor.[26] No tuvo ante su consideración documento alguno relacionado a gastos de terapias o servicios que no estuvieran cubiertos por el Departamento de Educación, Salud u otra agencia.[27]

### Testimonio de la señora Evelyn Ramos Santos

Atestiguó que labora como administradora auxiliar de protección social de menores.[28] Ha laborado con el DEPARTAMENTO DE LA FAMILIA desde hace dieciséis (16) años.[29] Tuvo la oportunidad de evaluar los documentos presentados por la señora PÉREZ CURET. La documentación suministrada no certificó una condición incapacitante y no se presentó evidencia de gastos o desembolsos extraordinarios concernientes a las condiciones de los jóvenes.[30]

Así, el 18 de enero de 2024, se rindió el *Informe del Oficial Examinador* (*Informe*) en el cual se recomendó a la JUNTA "confirmar la Acción de Denegación notificada a la [señora PÉREZ CURET] por la Administración de Familias y Niños (ADFAN) del DEPARTAMENTO DE LA FAMILIA, Oficina Regional de Bayamón".[31] El alusivo *Informe* contiene las siguientes determinaciones de hechos:

1. La Sra. Carmen Pérez Curet (parte apelante) lleva veinticinco (25) años como Hogar de Crianza y en septiembre de 2019 solicitó la extensión del Servicio de pago de Subvención hasta los veintiún (21) años para los jóvenes Eddie García Sáez y Caleb Cruz [sic] Rodríguez.
2. La fecha de nacimiento de Caleb Cruz Rodríguez es el 11 de septiembre de 2000 y la fecha de nacimiento de Eddie García Sáez es el 11 de octubre de 2002.
3. El 1 de febrero de 2023, la parte apelada le notificó a la Sra. Carmen Pérez Curet que *"No consideramos que existan los criterios para extender el pago de subvención. Confirmamos la decisión tomada por la Oficina Local."*
4. Inconforme con la determinación de la parte apelada, la Sra. Carmen Pérez Curet presentó apelación el 16 de febrero de 2023.
5. Durante la vista, la apelante indicó que es madre de crianza de Eddie García Sáez y Caleb Cruz Rodríguez desde que tenían tres (3) y cuatro (4) años, respectivamente. Además, que ellos recibían subvención por parte del Departamento de la Familia.

---

[26] *Transcripción de la Prueba Oral*, pág. 76, líneas 2- 10.
[27] *Transcripción de la Prueba Oral*, pág. 76, líneas 11- 16.
[28] *Transcripción de la Prueba Oral*, pág. 85, líneas 1- 2.
[29] *Transcripción de la Prueba Oral*, pág. 85, líneas 20- 22.
[30] *Transcripción de la Prueba Oral*, pág. 89, línea 12- pág. 90, línea 11.
[31] Apéndice de la *Revisión Judicial*, págs. 36- 43.

6.  El 1 de marzo de 2019, las partes suscribieron el "Convenio de Servicios para menor en un Hogar Temporero" mediante el cual, la apelante se comprometió a recibir a Caleb Cruz Rodríguez en su Hogar Sustituto y la parte apelada se comprometió a subvencionar a la parte apelante por la cantidad de $450.00 mensuales. La vigencia del convenio y el pago de la Subvención Especial Autorizada era del 1 de marzo al 9 de diciembre de 2019.

7.  El 30 de abril de 2019, las partes suscribieron el "Convenio de Servicios para menor en un Hogar Temporero", mediante el cual la apelante se comprometió a recibir a Eddie García Sáez en su Hogar Sustituto y la parte apelada se comprometió a subvencionar a la parte apelante por la cantidad de $700.00 mensuales. La vigencia del convenio y el pago de la Subvención Especial Autorizada era del 1 de marzo [al] 2 de febrero de 2020.

8.  Caleb Sáez Rodríguez cumplió dieciocho (18) años el 11 de septiembre de 2018 y recibió subvención hasta el 12 de septiembre de 2019.

9.  Eddie García Sáez recibió subvención hasta el 11 de o[c]tubre de 2020, fecha en que cumplió dieciocho (18) años.

10. Caleb Sáez Rodríguez está diagnosticado con Trastorno Déficit de Atención con Hiperactividad, Tipo Inatento (F.90.0) y medicado con Focalin 10 mg.

11. Eddie García Sáez está diagnosticado con Trastorno Déficit de Atención con Hiperactividad, Tipo Combinado (F90.2), Trastorno generalizado del desarrollo, no especificado (F84.9) y Trastorno Autista (F84.0). Medicado con Vistaril 25 mg, Focalin 10 mg y Risperdal 0.5 mg.

12. En el año 2017, el Tribunal le concedió a la parte apelante la tutela de los jóvenes Eddie García Sáez y Caleb Cruz Rodríguez.

13. Caleb Cruz Rodríguez recibía terapias grupales en la Clínica Merlos y estudiaba en la corriente regular en el Departamento de Educación.

14. Luego de culminar su cuarto año escolar, Caleb Cruz Rodríguez estuvo matriculado en la Universidad Interamericana y en ADP College, no culminó los estudios y no trabaja. Además, en el año 2022 tomó el examen para entrar al Army y fracasó en dos (2) ocasiones.

15. Eddie García Sáez recibe terapia desde pequeño, era estudiante del Programa de Educación Especial del Departamento de Educación y posteriormente fue ubicado en salón contenido con salón regular.

16. Durante la vista, la Sra. Evelyn Ramos indicó que *"yo puedo tener mi criterio de que es incapacitante, pero realmente esa es la función que hacen los documentos cuando pedimos a las personas, que sean los facultativos que evalúan el niño, quienes determinen que esa condición es incapacitante porque claramente nosotros no somos personas expertas para determinar incapacidad"* y que *"vamos a evaluar según la prueba documental que tengamos que pueda establecer que hay una incapacidad…".*

17. Los medicamentos, terapias y tratamientos de los jóvenes Eddie García Sáez y Caleb Cruz Rodríguez estaban cubiertos en su totalidad.

El *Informe* proveyó que, "[a] pesar de las condiciones diagnosticadas, sus limitaciones y de los medicamentos que los jóvenes utilizan, el propio

médico de éstos no los incapacita. De la evidencia presentada no surge que estos jóvenes tengan condiciones de salud físicas o mentales incapacitantes".[32] Entretanto, el 31 de enero de 2024, la JUNTA emitió la *Resolución* apelada.

Insatisfecha, el 20 de febrero de 2024, la señora PÉREZ CURET presentó su *Moción de Reconsideración*.[33] Sustentó que "existe amplia evidencia sustancial en el expediente, la cual demuestra una incapacidad de Eddie y Caleb en la realización de actividades e interacción con el mundo a su alrededor". El 21 de febrero de 2024, la JUNTA prescribió *Resolución en Reconsideración* declarando no ha lugar a la petitoria de reconsideración.[34]

Opuesta a lo decidido, el 25 de marzo de 2024, la señora PÉREZ CURET acudió ante este foro revisor mediante la *Revisión Judicial.* En la misma, señala el(los) siguiente(s) error(es):

> Erró la Junta Adjudicativa al determinar que de la prueba documental y oral presentada no surge que los jóvenes Eddie García Sáez y Caleb Sáez Rodríguez tengan condiciones de salud físicas o mentales incapacitantes.

> Erró la Junta Adjudicativa al determinar que las condiciones diagnosticadas, limitaciones y medicamentos de los jóvenes Eddie García Sáez y Caleb Sáez Rodríguez reconocidos por la Junta no son condiciones incapacitantes para propósitos de la extensión de la Tutela Subvencionada solicitada.

> Erró la Junta Adjudicativa al confirmar la acción administrativa y adoptar requisitos adicionales a los establecidos en la Normativa, Ley y Reglamentación Federal aplicable en torno a los requisitos necesarios para ser acreedor de una Tutela Subvencionada hasta los 21 años y[,] en consecuencia, imponer una interpretación más restrictiva en contravención a la provista por el Gobierno Federal.

> Erró la Junta Adjudicativa al concluir que la apelante no presentó prueba sustancial para destruir la presunción de legalidad y corrección que cobija a [la] decisión administrativa emitida por la ADFAN el 1 de febrero de 2023.

El 4 de abril de 2024, decretamos *Resolución* en la cual concedimos un

---

[32] Apéndice de la *Revisión Judicial*, pág. 42.
[33] *Íd.*, págs. 219- 233.
[34] *Íd.*, págs. 234- 235.

plazo de treinta (30) días a la **ADFAN** del **DEPARTAMENTO DE LA FAMILIA** para presentar su(s) alegato(s) en oposición y se reglamentaron los procedimientos para encauzar la reproducción de la prueba oral.

Más adelante, el 17 de julio de 2024, la señora **PÉREZ CURET** presentó su *Alegato Suplementario de la Revisión Judicial*. Argumentó que tanto la ley federal como la carta normativa de la **ADFAN**, requieren como un requisito para conferir la extensión de la subvención que un facultativo médico determine que la condición sufrida por la persona sea incapacitante. Agregó que, en conformidad a ello, la prueba documental que obra en el expediente demuestra que los jóvenes Caleb y Eddie padecen de diferentes circunstancias mentales que inciden y dificultan sus actividades cotidianas.

El 16 de agosto de 2024, la **ADFAN** presentó su *Alegato en Oposición*. Apuntaló que el derecho aplicable viabiliza la subvención de la tutela de los menores hasta los veintiún años (21) años, si el Estado (**ADFAN**) determinase que el menor padece de alguna discapacidad física o mental.

Evaluado concienzudamente el expediente del caso; contando con el beneficio de la comparecencia de ambas partes; y habiéndole dado la debida consideración a la transcripción de la prueba oral, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

### - II -

### - A - *Revisión Judicial*

La Ley Núm. 38- 2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[35] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[36]

---

[35] 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[36] 3 LPRA § 9671.

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[37] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[38] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[39]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[40] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[41] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[42]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[43] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó

---

[37] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004). Véase, además J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones Situm (2017), págs. 304– 306.

[38] *Fonte Elizondo v. F & R Const.*, 196 DPR 353 (2016); *Otero v. Toyota*, 163 DPR 716 (2005). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Bogotá, Ed. Forum, 2001, pág. 543.

[39] *Pérez López v. Depto. Corrección*, 208 DPR 656, 660 (2022).

[40] *Transporte Sonnell, LLC v. Junta de Subastas*, 2024 TSPR 82; 214 DPR ____; *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).

[41] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

[42] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).

[43] *Torres Rivera v. Policía de PR, supra*, pág. 628.

arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.[44]

Primordialmente, el alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[45]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[46] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[47] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[48] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su *consideración*".[49] De modo que no podrá basarse únicamente en simple alegaciones.A esto se le conoce como la norma de la *evidencia sustancial,* con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[50] Por lo tanto, aun cuando exista más de una

---

[44] *Íd.*

[45] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud,* 210 DPR 79 (2022).

[46] *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

[47] *Otero v. Toyota, supra,* pág. 728.

[48] *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019).

[49] *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 244 (2007).

[50] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003).

interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[51]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[52] Nuestro Máximo Foro ha pronunciado que "los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias".[53] Es decir, no existe deferencia en la interpretación de derecho realizada por una agencia administrativa, debido a que esto es una función consustancial de los tribunales de justicia.[54]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[55] A *contrario sensu*, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[56] Del mismo modo, el Prof. Echevarría Vargas ha apuntalado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[57]

### - B- *Subvención por Tutela*

En nuestro ordenamiento jurídico, las controversias sobre los vínculos familiares han sido examinadas por los tribunales en el contexto del derecho a la intimidad.[58] En consecuencia, el Estado ha de reducir a un mínimo su intervención con sensitivas urdimbres emocionales como lo son las relaciones de familia.[59]

---

[51] *Id.*
[52] 3 LPRA § 9675. *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[53] *Vázquez v. Consejo Titulares*, 2025 TSPR 56, pág. 28.
[54] *Íd.*, pág. 32.
[55] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[56] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177 (2009).
[57] J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 5ta. ed. Rev., San Juan, Ediciones Situm, 2023, pág. 340.
[58] *Rexach v. Ramírez*, 162 DPR 130, 143 (2004).
[59] *García Santiago v. Acosta,* 104 DPR 321, 324 (1975).

En ese sentido, los padres y las madres tienen un derecho constitucional fundamental de criar, cuidar, custodiar y de escoger con quienes se relacionan sus hijos.[60] Tal derecho está protegido por la *Constitución del Estado Libre Asociado de Puerto Rico*, así como la *Constitución de los Estados Unidos de América*.[61] Empero, el aludido derecho no es absoluto, por esta razón estos ceden *ante intereses apremiantes del Estado en lograr el bienestar de los menores.*[62]

Existen múltiples derechos que emanan de las relaciones familiares y el Estado persigue garantizar el *interés óptimo de los menores*. En este caso, es menester enfocarnos en la figura jurídica de la *tutela subvencionada*. Según el *Manual de Normas y Procedimientos de los Servicios de Cuidado Sustituto y Adopción*, la **subvención** se define como la "*cantidad de dinero que aporta la Agencia a los menores **con** custodia del Departamento de la Familia para los gastos de sostenimiento y de sus necesidades*".[63] El DEPARTAMENTO DE LA FAMILIA en su Plan de Reorganización instauró el *Plan de Permanencia de Tutela* conforme la legislación *Fostering Connections To Success and Increasing Adoptions Act of 2008.*[64] Mediante la *Carta Normativa ADFAN – CSA – 2006 – 02A* (*Carta Normativa*), se implantó el *Plan de Tutela,* como uno de los planes de permanencia que se tomará en consideración con menores, bajo la custodia del Estado. En ese contexto, el *Plan de Permanencia de Tutela* es una opción dirigida al logro de la meta de permanencia, la cual es uno de los componentes medulares que asegura que los menores desarrollen un sentido de pertenencia y estabilidad en el ámbito familiar, comunal y social. En tal sentido, este método implica un tracto formal, a través del cual se ha identificado a una persona que pueda ser un familiar o un recurso particular que haya estado involucrado en la supervisión y cuidado del menor, de

---

[60] *Rexach v. Ramírez, supra,* pág.146.
[61] *Íd.,* pág. 148.
[62] *Íd.,* págs. 147– 148.
[63] Véase: Manual CSA – 2020 (VII) (KK). (diciembre de 2020).
[64] (énfasis nuestro). Refiérase: https://www.congress.gov/bill/110th-congress/house-bill/6893.

manera que, en su hogar se haya logrado estabilidad y el desarrollo de lazos afectivos y familiares para con el menor.[65]

En ese contexto, la *Carta Normativa* instituye los requisitos y los criterios de selección del *Plan de Tutela*. Entre los múltiples criterios y elementos a evaluar y considerar; se encuentra el límite de edad, para la otorgación de la subvención. Bajo el *Plan de Permanencia de la Tutela,* **como norma general, la subvención será otorgada hasta los dieciocho (18) años o hasta los veintiún (21) años, en caso de que el menor tuviera condiciones de salud físicas o mentales incapacitantes**.[66]

El estatuto federal textualmente expone:[67]

(A) Notwithstanding any other provision of this section, a payment may not be made pursuant to this section to parents or relative guardians with respect to a child—
(i) who has attained—
(I) 18 years of age, or such greater age as the State may elect under section 675(8)(B)(iii) of this title; or
(II) 21 years of age, **if the State determines that the child has a mental or physical handicap which warrants the continuation of assistance**;
(ii) who has not attained 18 years of age, if the State determines that the parents or relative guardians, as the case may be, are no longer legally responsible for the support of the child; or
(iii) if the State determines that the child is no longer receiving any support from the parents or relative guardians, as the case may be.

Es decir, para que proceda la extensión de los tres (3) años de la subvención, el **Estado** debe determinar que el menor padece o ha sido diagnosticado con alguna condición física o mental incapacitante.

### - C - *Doctrina del Campo Ocupado*

En términos precisos, es conocido que la Constitución de los Estados Unidos de América es de aplicabilidad en Puerto Rico. Con ello en perspectiva, cabe destacar que, en caso de conflicto con las leyes estatales, cuando la ley federal no pueda *coexistir* con la estatal, la Constitución dispone que **la Ley federal tendrá supremacía sobre la Ley estatal**.[68] Tal

---

[65] Refiérase *ADFAN – CSA – 2013 – 011*. (8 de julio de 2013).
[66] *Íd*., (4). (Énfasis nuestro).
[67] 42 US Code § 673 - **Adoption and guardianship assistance program**. (énfasis nuestro).
[68] *Cotto Morales v. Ríos*, 140 DPR 604 (1996). (énfasis nuestro).

máxima de derecho se conoce como la *cláusula de supremacía*, de la cual emana la doctrina del *campo ocupado*. En virtud de esta doctrina es que el Congreso de los Estados Unidos de América puede ocupar el campo sobre un asunto federal y excluir la regulación local.[69]

Principalmente, la doctrina de *campo ocupado* persigue evitar los conflictos regulatorios y fomentar así una política uniforme.[70] Esta doctrina **es aplicable a Puerto Rico como si fuera un estado**.[71] El gobierno federal ocupa el campo, cuando así lo haya expresado el Congreso o cuando la clara intención de la ley sea privar de *jurisdicción* a los tribunales estatales, o en aquellas circunstancias en las cuales el interés o propósito federal es tan dominante que no debe existir reglamentación estatal, o cuando esta podría producir un resultado incompatible con los objetivos federales en determinada área.[72] Por ende, cualquier ley estatal que contravenga una ley federal es nula.[73]

- III -

La señora **PÉREZ CURET** punteó que la **JUNTA** se equivocó al evaluar la prueba documental y, así determinar que los jóvenes Caleb y Eddie, sus hijos de crianza, no poseen condiciones de salud incapacitantes. Fundamentó su posición, en que sus circunstancias los hacía merecedores de una subvención *excepcional* hasta los veintiún (21) años, por estos contar con un diagnóstico de Trastorno de Déficit de Atención con Hiperactividad (TDAH), condición para la cual ingieren medicamentos regularmente.[74] En el caso de Eddie, además del mencionado diagnóstico, tiene un prognosis de un *espectro leve*

---

[69] *Lilly del Caribe. v. Mun. de Carolina*, 210 DPR 306, 318 (2022); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009).

[70] *Mun. de Peñuelas v. Ecosystems, Inc.*, 197 DPR 5, 14 (2016); *González v. Mayagüez Resort & Casino*, supra, pág. 566; *Rivera v. Security Nat. Life Ins. Co.*, 106 DPR 517, 523 (1977).

[71] *Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 499, 108 S. Ct. 1350, 99 L. Ed. 2d 582 (1988). (énfasis nuestro).

[72] *Lilly del Caribe, Inc. v. Municipio Autónomo de Carolina*, supra, pág. 318-319; *Mun. de Peñuelas v. Ecosystems, Inc*., supra, págs. 14–15.

[73] *Lilly del Caribe, Inc. v. Municipio Autónomo de Carolina*, supra, pág. 319.

[74] Del expediente administrativo se desprende que joven Caleb toma Focalín 10mg; mientras que Eddie ingiere Vistaril 25mg; Focalín 10mg; y Risperdal 0.5mg. Apéndice de la *Revisión Judicial*, págs. 52– 53.

*de autismo*.[75] En ese sentido, la señora **PÉREZ CURET** citó textualmente las condiciones de los jóvenes Caleb y Eddie como incapacidad que han sido reconocidas en el *Individuals with Disabilities Education Act*.[76]

Por su parte, la **ADFAN** decidió descontinuar la subvención de tutela debido a que del récord o expediente administrativo no surge que estén discapacitados para estudiar o trabajar y así progresar en sus vidas. Sucintamente, replicó que "ninguno de los dos expedientes médicos específica cuáles son las [condiciones] cómo afecta el funcionamiento de estos jóvenes en su desarrollo. Si se examinan los expedientes médicos, ambos tienen una ...se desprende que ambos tienen capacidades de progresar y de adaptarse."[77] **ADFAN** reiteró que la señora **PÉREZ CURET** no ha evidenciado o probado que Caleb y Eddie, sus hijos de crianza, tengan alguna condición incapacitante que justifique extender la subvención de su tutela hasta que estos advinieran a la mayoría de edad (21 años).

Expuestos los argumentos principales de las partes, nos encontramos en posición de resolver. Este caso nos plantea la controversia de evaluar si un diagnóstico de Trastorno de Déficit de Atención e Hiperactividad (TDAH) y/o el autismo, pueden considerarse como una condición mental incapacitante, suficiente para extender excepcionalmente una tutela subvencionada.

---

[75] Apéndice de la *Revisión Judicial*, pág. 191.

[76] La *Ley de Educación para Todos los Niños Discapacitados*, conocida en inglés como *Education for All Handicapped Children Act* (EHA), Ley Pública 94- 142), se creó para apoyar a los estados y localidades en la protección de los derechos, la satisfacción de las necesidades individuales y la mejora de los resultados de bebes, infantes, niños y jóvenes con discapacidades y sus familias. En el 1990, su nombre cambió a *Ley de Educación para Personas con Discapacidades*, conocida en inglés como *Individuals with Disabilities Education Act* (IDEA)**.** Su propósito es garantizar que los niños con discapacidades tengan la oportunidad de recibir una educación pública adecuada y gratuita, al igual que los demás niños. Dicha legislación define:

> **CHILD WITH A DISABILITY**-
> (A) IN GENERAL- The term child with a disability means a child (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this title as emotional disturbance), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; **and** (ii) who, by reason thereof, needs special education and related services.. Refiérase a 20 USC § 602 (3) (A). (énfasis nuestro).

[77] *Transcripción de la Prueba Oral*, pág. 111.

Al efectuar una búsqueda, el Centro para el Control y la Prevención de Enfermedades, conocido en inglés como Centers for Disease Control and Prevention, apuntala que "[e]l trastorno por déficit de atención e hiperactividad (TDAH) es uno de los trastornos neuroconductuales más comunes de la niñez. Por lo general, se diagnostica inicialmente en la infancia y a menudo perdura hasta la edad adulta. [...] En la mayoría de los casos, la mejor forma de tratar el trastorno por déficit de atención e hiperactividad es con una combinación de terapia conductual y medicamentos.".[78]

Desde otra perspectiva, la Asociación Americana de Psiquiatría asevera que "[a]demás, del TDAH, muchos niños padecen de otros trastornos simultáneamente, como la ansiedad, la depresión, el autismo o problemas de conducta (CDC, 2022)".[79] Enfatiza, además, que "[e]l TDAH no implica que un niño no sea inteligente o que no pueda tener éxito en la escuela. Una vez que recibe tratamiento y se controlan sus síntomas, puede tener un desempeño comparable al de sus compañeros".[80]

En lo referente a "**condiciones de salud físicas o mentales incapacitantes**" debemos enfatizar la palabra "*incapacitantes*". Según la Real Academia Española (RAE), la palabra *incapacidad* tiene dos (2) acepciones: (i) "falta de capacidad para hacer, recibir o aprender algo"; y (ii) "falta de entendimiento o inteligencia."[81]

Por encontrarse intrínsecamente relacionados, discutiremos los errores señalados de forma conjunta. Al examinar detenidamente la totalidad del historial administrativo, notamos que, la *Carta Normativa* no define la figura o requisito de *incapacidad* para la concesión de la extensión de subvención. Igualmente, carece de una *Sentencia* judicial o de una declaración o certificación de un facultativo médico determinando que los

---

[78] Véase: https://www.cdc.gov/adhd/es/articles/que-es-el-trastorno-por-deficit-de-atencion-e-hiperactividad-tdah.html

[79] Véase: https://www.psychiatry.org/patients-families/la-salud-mental/trastorno-por-deficit-de-atencion-con-hiperactivid/que-es-el-tdah (énfasis nuestro).

[80] *Íd*.

[81] Véase https://dle.rae.es/incapacidad.

jóvenes Caleb y Eddie tengan condiciones que pueden catalogarse como incapacitantes.

En ese sentido, la normativa federal – la cual delega tal facultad al Estado – tampoco exige o establece los elementos para determinar qué condiciones – a la luz de esta reglamentación – se deben clasificar incapacitantes para ser merecedor o conceder la extensión de la subvención.

Evidentemente, la prueba documental presentada por la señora **PÉREZ CURET** acredita que, los jóvenes Caleb y Eddie poseen un diagnóstico de TADH, condición para la cual han recibido tratamiento farmacológico y terapias individuales en el Programa de Niños y Adolescentes de la Clínica Dr. Merlos y Asociados desde el año 2010.[82]

Empero, al escrutar escrupulosamente la *Transcripción de la Prueba Oral*, la señora **PÉREZ CURET** asintió que los gastos recurrentes de los jóvenes Caleb y Eddie fueron cubiertos por el **DEPARTAMENTO DE LA FAMILIA** y el Departamento de Educación. La señora **PÉREZ CURET** no ofreció información precisa sobre cuáles fueron los gastos, si alguno, en los cuales incurrió que no fueron cubiertos por los Departamentos. Incluso, del Apéndice se desprende que el joven Caleb, a pesar de haber alcanzado los dieciocho (18) años de edad durante el año 2018 (fecha de nacimiento: 11 de septiembre de 2000), continuó recibiendo los beneficios de la subvención hasta septiembre de 2019. Es decir, un (1) año adicional a lo pautado en la legislación federal y la *Carta Normativa*.

Precisado estos puntos, compelimos que, ciertamente las condiciones de salud (diagnóstico de TADH) de los jóvenes Caleb y Eddie son serias y de cuidado. Pese a ello, consideramos que son superables. Esto es, los tratamientos recibidos les ayudaron a reducir sus síntomas y mejorar su funcionamiento. Un análisis de las hojas de evaluación y las *Certificaciones* de la Clínica Dr. Merlos y Asociados reflejan que tanto Caleb como Eddie

---

[82] Apéndice de la *Revisión Judicial*, págs. 52– 153.

mostraron progreso en la medida en que continuaban recibiendo sus tratamientos farmacológicos, y terapias individualizadas y/o familiares. Ambos alcanzaron progreso; inclusive, habían participado en actividades sociales que los entusiasmaba. Sus diagnósticos, aunque pudiesen ser limitantes, no son sinónimo de falta de capacidad. La propia *evidencia sustancial* que obra en el expediente acredita o confirma que los jóvenes Caleb y Eddie consiguieron sobreponerse a sus circunstancias, y graduarse de duodécimo grado. El joven Eddie, pese a su diagnóstico de autismo, logró enriquecer su lenguaje expresivo mediante el escrito de canciones.

Nótese que de los *Informe de Evaluación Psicológica* del Departamento de Educación ni de las hojas de evaluación de la Clínica del Dr. Merlos y Asociados se desprende algún incidente particular que denote falta de capacidad sin oportunidad de progreso a conocerse como condiciones "mentales incapacitantes".

Escudriñado minuciosamente la totalidad del expediente, no hallamos prueba o indicador alguno que refleje que el DEPARTAMENTO DE LA FAMILIA hubiese actuado de manera arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción al denegar la extensión de subvención. Contrario a ello, denotamos que del expediente emana la existencia de suficientes elementos que nos llevan a concluir que esta decisión administrativa está sustentada o avalada por *evidencia sustancial*.

No subsiste razón alguna de hecho o derecho que nos persuada a intervenir y variar el dictamen impugnado. Además, no se desprende de la *Revisión Judicial* alguna otra prueba o evidencia para rebatir la presunción de corrección que cobija el dictamen administrativo.

Cónsono con lo anterior, somos del criterio de que la *Resolución* decretada por el DEPARTAMENTO DE LA FAMILIA fue una apropiada

### - IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Resolución* prescrita el 31 de enero de 2024 por la JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones